IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YELENA YENTIN, et al.          :          CIVIL ACTION
                               :
          v.                   :
                               :
MICHAELS, LOUIS &              :
ASSOCIATES, INC., et al.       :          NO. 11-0088

MEMORANDUM

Dalzell, J.                              September 14, 2011

          Plaintiffs Yelena ("Yelena") and Alexander Yentin

("Alexander") sue defendants Michaels, Louis & Associates, Inc.

("MLAI") and Louis M. Ciccone ("Ciccone"), alleging claims under

the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15

U.S.C. §§ 1692, et seq., as well as state-law claims under the

Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73

Pa. Cons. Stat. §§ 2270.1, et seq., and the Pennsylvania Unfair

Trade Practices and Consumer Protection Law ("UTPCPL").  73 Pa.

Cons. Stat. §§ 201.1, et seq..  The Yentins' suit arises out of

defendants' efforts -- including institution of a suit in the

Magisterial District Court of Bucks County, Pennsylvania -- to

collect on a debt that the Yentins allegedly did not owe.

          Defendants filed a motion to dismiss plaintiffs'

complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), to

which plaintiffs filed a response in opposition, leading

defendants to file a reply.  Defendants advance seven reasons

that we should dismiss plaintiffs' claims against them: (1) the
bulk of plaintiffs' factual allegations do not concern the
defendants, Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.'
Mem.") at 8; (2) plaintiffs' allegations as to the defendants are
legal and conclusory in nature, Defs.' Mem. at 9, 13-14; (3)
contrary to plaintiffs' contention, the FDCPA imposes no duty to
investigate the validity of debts, id. at 9-11; (4) even if the
FDCPA did impose a duty to investigate, defendants carried out a
sufficient investigation, id. at 11-12; (5) plaintiffs cannot
succeed on their claims against Ciccone because they have not
attempted to pierce the corporate veil, id. at 14-15; (6) Yelena
has no standing to bring claims against the defendants, id. at
15; and (7) plaintiffs' state-law claims are derivative of their
FDCPA claims, and hence fail due to the inadequacy of those
federal claims.  Id. at 15.  Defendants also seek attorney's fees
and costs from plaintiffs pursuant to 15 U.S.C. § 1692k(a)(3) for
maintaining this action in bad faith.  Id.

        The allegations in plaintiffs' complaint are sparse,
especially as regards defendants, and plaintiffs attempt both to
invent facts that might support causes of action and to fabricate
rights under the applicable statutes that do not exist.
Nonetheless, for the reasons discussed below, we will only grant

defendants' motion to dismiss plaintiffs' FDCPA claims in part, and will give plaintiffs leave to file an amended complaint that cures the deficiencies we identify herein.  Because a plaintiff that states a claim for violation of the FDCPA has also stated a claim under the FCEUA and UTPCPL, we deny defendants' motion to dismiss with respect to plaintiffs' state-law claims.

## I.   **Factual Background**

In evaluating a motion to dismiss under Rule 12(b)(6),[1] we "'accept all factual allegations in the complaint as true and

---

[1] Defendants bring their motion pursuant to Rules 12(b)(2) and 12(b)(6), which provide that "a party may assert the following defenses by motion: . . . (2) lack of personal jurisdiction; . . . (6) failure to state a claim upon which relief can be granted."  Defendants contend that since "[p]laintiffs have not alleged any theory of 'veil piercing' or any other theory that would impose any kind of liability, if there were any liability at all, on Mr. Ciccone personally," "[p]laintiffs' claims against Defendant Louis M. Ciccone fail for lack of personal jurisdiction."  Defs.' Mem. at 14.  As the Supreme Court recently observed, "the principal inquiry" with respect to personal jurisdiction "is whether the defendant's activities manifest an intention to submit to the power of a sovereign," J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011), i.e. whether the defendant has "'purposefully avai[led] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  Id. (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Since defendants appear to challenge not whether Ciccone has submitted to the power of this Court, but rather the viability of the claims asserted against him, we will construe defendants' motion as advanced solely under Rule 12(b)(6).

give the pleader the benefit of all reasonable inferences that can be fairly drawn therefrom.'" Ordonez v. Yost, 289 Fed. Appx. 553, 554 (3d Cir. 2008) (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)).  We may "'consider only allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim,'" Brown v. Daniels, 128 Fed. Appx. 910, 913 (3d Cir. 2005) (quoting Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004)) (quotation marks omitted), where a document forms the basis of a claim if it is "'integral to or explicitly relied upon in the complaint.'" Id. (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)) (emphasis omitted).

The parties have included with their submissions to the Court a number of exhibits.  Plaintiffs attach to their complaint certified mail receipts that allegedly document communications plaintiffs mailed to credit reporting agencies and creditors, as well as the complaint that was filed against plaintiffs in Bucks County.  See Pls.' Compl. ¶¶ 3-4; Exs. A & B to Pls.' Compl.  For their own part, defendants attach to their motion correspondence between MLAI and Alexander that purportedly establishes the adequacy of MLAI's debt investigations and plaintiffs' lack of good faith in maintaining this action.  See Defs.' Mem. at 4-5;

4

Exs. A-C to Defs.' Mem.  Plaintiffs' response includes a letter pertaining to the resolution of the action in Bucks County, Exs. B to Pls.' Resp. in Opp. to Defs.' Mot. ("Pls.' Resp."), and defendants' reply includes public documents regarding MLAI and "Michael, Louis & Associate's" ("MLA's") status as entities.  <u>See</u> Ex. E to Pls.' Resp.; Ex. A to Defs.' Reply in Support of Mot. to Dismiss ("Defs.' Reply").  This proliferation of exhibits risks "'converting the motion to dismiss into one for summary judgment,'" <u>In re Burlington Coat Factory</u>, 114 F.3d 1410 at 1426 (brackets omitted) (quoting <u>Shaw v. Digital Equip. Corp.</u>, 82 F.3d 1194, 1220 (1st Cir. 1996)), when we are only supposed to "'consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'"  <u>Id.</u> (quoting <u>In re Trump Casino Sec. Litig.</u>, 7 F.3d 357, 368 n.9 (3d Cir. 1993)).  Of the documents the parties offer, only the documents relating to the action in Bucks County meet these requirements, while the documents defendants proffer regarding MLA and MLAI's entity status qualify as public records.  We will consider only these attachments in ruling on defendants' motion.

Plaintiffs allege that they are adult citizens of Pennsylvania, Pls.' Compl. ¶ 2, and that MLAI is "a corporate

entity that conducts business in the Commonwealth of Pennsylvania." Id. ¶ 4. As for Ciccone, plaintiffs claim that he is an adult citizen of Pennsylvania "who is the officer, majority shareholder, and/or majority interest holder" of MLAI.[2] Id. ¶ 5.

According to plaintiffs, they learned in May of 2004 that unknown individuals had used their personal information to open credit card accounts and lines of credit with financial institutions and then "cashed out" these accounts and lines of credit to the maximum available limit. Id. ¶¶ 11-12. Plaintiffs aver that they immediately contacted the Northampton Township Police Department ("NTPD"), which initiated an investigation regarding the alleged identity theft and fraudulent use of information. Id. ¶ 13. Plaintiffs also allege that they mailed notifications and disputes to credit reporting agencies and

---

[2] Plaintiffs allege the legal conclusions that they are "consumers" under the FDCPA, FCEUA, and UTPCPL, Pls.' Compl. ¶ 3, and that defendants are "debt collectors" under the same statutes. Id. ¶ 8. Plaintiffs further assert the following exemplar of clarity in legal writing: "All of the acts alleged to have been done or not to have been done by Defendant(s) were done or not done by Defendant(s) and/or by duly authorized agents, servants, workmen, and/or employees, acting within the scope and course of their authority and/or employment with and/or on behalf of Defendant(s)." Id. ¶ 7. Of course, we will ignore these conclusory allegations in ruling on defendants' motion.

creditors seeking payment for the fraudulently opened accounts and lines of credit, advising them that the identity theft had occurred, id. ¶ 14.  In particular, plaintiffs allege that they informed the original creditors of the accounts on which defendants later sought payment, as well as defendants themselves, of the identity theft by telephone.  Id. ¶ 15. Nonetheless, plaintiffs claim that they have been subjected to at least three lawsuits by debt collectors that sought payment for fraudulently incurred debts -- plaintiffs state that they prevailed in each of these lawsuits.  Id. ¶¶ 16-17.

In the summer of 2007, "[t]o the best of Plaintiffs' knowledge," someone used their personal information to open at least one unauthorized account or line of credit with CashCall, Inc. ("CashCall").  This person then began withdrawing funds from plaintiffs' bank account without their knowledge or authorization.  Id. ¶¶ 18-19.  Plaintiffs state that they informed CashCall that they had "nothing to do" with any credit card or line of credit it had issued, and asked CashCall to cease collection activities against them.  Id. ¶¶ 20-21.  Furthermore, plaintiffs aver that Alexander spoke on several occasions with a female representative of CashCall.  In the course of these conversations, the representative called Alexander a thief and a

liar, told him that his family should be in jail, and warned that
plaintiffs would lose their home if they did not immediately pay
CashCall.  Id.  ¶¶ 22-23.  According to plaintiffs, they then
contacted the NTPD to report that CashCall was withdrawing funds
from their accounts without authorization.  Following this
report, plaintiffs received no further communications from
CashCall.  Id. ¶¶ 24-25.

On November 29, 2010, MLA/MLAI[3] filed a civil complaint
against Alexander in the Magisterial District Court of Bucks
County.  In plaintiffs' words, MLAI sought "to collect upon an
alleged debt owed to CashCall, Inc." Id. ¶ 26; see also Ex. B to
Pls.' Compl. (attaching hearing notice and complaint in Bucks
County action).  Ciccone verified this complaint in his capacity
as "Owner."  Pls.' Compl. ¶ 27; Ex. B to Pls.' Compl.  According
to plaintiffs, defendants dismissed their claims in this matter
on December 17, 2010.  Pls.' Compl. ¶ 29.

_____

[3] Exhibit B contains both the civil action hearing
notice in the Bucks County action and the civil complaint.  While
the hearing notice identifies "Michaels Louis & Associates Inc."
as the plaintiff, the complaint states that the plaintiff is
merely "Michaels, Louis & Associates."  This ambiguity will
become important when we discuss the claims against Ciccone.  To
distinguish between these entities, we will refer to the former
as "MLAI" and to the latter as "MLA".

## II.  **Analysis**

As the Supreme Court has explained, "only a complaint that states a plausible claim for relief survives a motion to dismiss" pursuant to Rule 12(b)(6), giving rise to a "context-specific" inquiry that "requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).  To survive this inquiry, "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While this standard is not as demanding as a "probability requirement," a plaintiff must allege facts sufficient to show that there is "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).  In essence, a plaintiff must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quotation marks omitted).  Moreover, a pleading may not simply offer "labels and conclusions," Twombly, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  Under Rule 12(b)(6), "the defendant bears

9

the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

### A. The Relevance Of Plaintiffs' Allegations

Defendants note that "[i]t is not until paragraph 26 of the Complaint that Plaintiff even mentions the Defendants." Defs.' Mem. at 8. This is not quite accurate, though it is true that nearly all of plaintiffs' allegations as to events occurring before November 29, 2010 -- the day MLA/MLAI filed a civil complaint against Alexander in Bucks County -- concern actors and entities other than MLA. Pls.' Compl. ¶¶ 11-25. The only factual allegations in plaintiffs' complaint that appear relevant to the question of defendants' liability under the FDCPA, FCEUA, and UTPCPL are the following: (1) at an undetermined time, plaintiffs directly advised defendants by phone that an identity theft had occurred involving the unauthorized use of plaintiffs' information, id. ¶ 15; (2) in the summer of 2007, someone opened an account or line of credit with CashCall using plaintiffs' personal information, without authorization, id. ¶ 18; and (3) MLA/MLAI filed a civil complaint against Alexander on November 29, 2010 to collect debts owed to CashCall, with Ciccone verifying the complaint as MLA's owner. Id. ¶¶ 26-27. While

10

plaintiffs' other allegations, taken as true, suggest that since May of 2004 plaintiffs have experienced an unpleasant series of events resulting from the theft of their identities, we will ignore these allegations as irrelevant in ruling on defendants' motion.

**B.   <u>Ciccone's Personal Liability</u>**

We will begin by considering one of the final arguments defendants advance in their motion to dismiss, since it concerns a fundamental ambiguity in the facts plaintiffs have pleaded. Defendants urge the dismissal of plaintiffs' claims against Ciccone, arguing that "at no time has Mr. Ciccone acted in any capacity other than as an owner and officer of MLA regarding anything remotely connected with Plaintiff, and any claim should have been properly raised against the entity filing, not the individual signing for MLA on its behalf."  Defs.' Mem. at 14. Plaintiffs respond that "the MDC Complaint appears to have been filed on behalf of [a] fictitious name -- the caption contains no corporate indicia or abbreviations," and that it is therefore unknown "whether the MDC Complaint was filed by Mr. Ciccone personally under his fictitious name or by his homonymous corporation."  Pls.' Resp. at 16.  Moreover, plaintiffs claim

that "Mr. Ciccone actively directed the collection activities aimed at the Yentins." Id. at 16-17. Defendants reply that "[t]he fact of MLA's current status as an incorporated entity appears on the same search screen as that of the previous fictitious name Plaintiffs' [sic] attached to their Response." Defs.' Reply at 5-6; see also Ex. B to Defs.' Reply.

### 1. **Ambiguity As To The Entity Filing Suit**

We have already noted that the complaint defendants filed in Bucks County creates some ambiguity as to the identity of the entity filing the complaint. While the hearing notice identifies "Michaels Louis & Associates Inc." as the plaintiff, the complaint states that the plaintiff is "Michaels, Louis & Associates." Ex. B to Pls.' Compl. The public business entity records that defendants attach to their reply do not resolve this ambiguity -- they merely demonstrate that "Michaels Louis & Associates," a "[f]ictitious [n]ame[]," and "Michaels, Louis & Associates, Inc.," a "[b]usiness [c]orporation," are both currently active entities. Ex. B to Defs.' Reply. The civil complaint in the Bucks County action identifies "Louis M. Ciccone" as the "Owner" of the plaintiff in that action. Ex. B to Pls.' Compl. If it was MLA, not MLAI, that filed the civil

complaint against plaintiffs, then Ciccone would not be shielded by the corporate veil from liability for MLA's actions.  However, if it was MLA that filed the action, then plaintiffs have not stated a claim against MLAI under the FDCPA since it was MLA that allegedly took the actions violative of the Act.

We are constrained, in ruling on a motion to dismiss, to draw "all reasonable inferences" in favor of the plaintiff. Ordonez v. Yost, 289 Fed. Appx. at 554.  Plaintiffs' complaint, and the exhibits upon which it relies, present genuine ambiguity as to the identity of the entity that filed suit against Alexander in the Magisterial District Court of Bucks County. Drawing the inference that this entity was in fact MLA disadvantages plaintiffs because it would mean that plaintiffs have not stated a claim against MLAI -- the named defendant -- under the FDCPA.  As we explain below, the complementary inference -- that the suing entity was MLAI -- does not similarly disfavor plaintiffs, since they may still maintain a claim against named defendant Ciccone under such factual circumstances. We will consequently draw the latter inference.

2.   <u>Ciccone's Personal Liability Under The FDCPA</u>

If we assume that it was MLAI that filed the complaint against the plaintiffs, they may still state a claim against Ciccone in his individual capacity.  The Seventh Circuit concluded in <u>Pettit v. Retrieval Masters Creditor Bureau, Inc.</u>, 211 F.3d 1057, 1059 (7th Cir. 2000) (citations omitted), that

> [U]nder our holding in <u>White v. Goodman</u>, the extent of control exercised by an officer or shareholder is irrelevant to determining his liability under the FDCPA.  Because such individuals do not become "debt collectors" simply by working for or owning stock in debt collection companies, we held that the Act does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced.  Rather, the FDCPA has utilized the principle of vicarious liability.

The Eastern District of New York, on the other hand, has determined that an employee of a debt collector may be individually liable under the FDCPA based on two grounds:

> First, each employee is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts or who regularly collects or attempts to collect . . . debts owed or due . . . another . . . ."  Second, Zapata and Soto are each affirmative actors and tortfeasors, who actually made the actionable phone calls, and would be

14

> personally liable if this was a tortious
> cause of action. Thus, the defendants Met
> Retail, Zapata and Soto are jointly and
> severally liable for the damages incurred by
> the plaintiff, if there is liability.

Teng v. Metro. Retail Recovery Inc., 851 F. Supp. 61, 67

(E.D.N.Y. 1994) (ellipses in original).

Decisions within our own Circuit suggest that neither

Pettit nor Teng express the rule that controls within this

jurisdiction.  Shortly after Teng was decided, Judge Jones cited

it for the proposition that "employees of debt collectors may be

liable under the FDCPA," consequently finding that a plaintiff

had stated a claim against two individual employees of a debt-

collecting business.  Zhang v. Haven-Scott Assocs., Inc., 1996 WL

355344, at *9 & n.12 (E.D. Pa. 1996).  In Pollice v. National Tax

Funding, L.P., 225 F.3d 379, 405 n.29 (3d Cir. 2000), however,

our Court of Appeals noted -- and appeared implicitly to approve

-- Pettit's holding before distinguishing it, observing that "we

deal with the liability of the general partner where the limited

partnership meets the definition of 'debt collector.'  We believe

that a general partner exercising control over the affairs of

such a partnership may be held liable under the FDCPA for the

acts of the partnership."  Based on this holding, Judge Katz

concluded that "individuals who exercise control over the affairs

15

of a business may be held liable under the FDCPA for the business'[s] actions," _Piper v. Portnoff Law Assocs._, 274 F. Supp. 2d 682, 690 (E.D. Pa. 2003), and that therefore liability may lie against "defendants [who] signed debt collection letters, or authorized others to sign the letters for them, and were involved in [a debt-collecting business's] day to day operations." _Id._ at 689; _see also_ _Albanese v. Portnoff Law Assocs._, 301 F. Supp. 2d 389, 400 (same). Judge McVerry has agreed with _Albanese_ that under the FDCPA, "when individuals exercise control over the affairs and overall operations of an entity, individuals can be held liable on the part of an affiliated entity" -- though he rejected the notion "that an active role is enough to establish liability." _McNally v. Client Servs., Inc._, 2007 WL 4561152, at *4 (W.D. Pa. 2007).

Summarizing this jurisprudence, it appears unlikely that an employee may be held liable as a debt collector under the FDCPA merely for playing an active role in debt collection activities. _Teng_, and its endorsement in _Zhang_, thus do not control with respect to mere employees. But, contrary to _Pettit_, an entity or individual who exercises control over the activities of a debt-collecting business may be liable under the Act. Plaintiffs have alleged that Ciccone is an officer of MLAI, Pls.'

16

Compl. ¶ 5, and it was Ciccone who signed the civil complaint
filed in Bucks County against Alexander on MLAI's behalf.  Ex. B
to Pls.' Compl.  If institution of this suit violated the Act --
a question we will consider shortly -- then these allegations are
sufficient, if proven, to support liability against Ciccone as an
individual.  This is true even if it was MLAI -- an incorporated
entity -- who filed the civil complaint against Alexander.  We
will thus deny defendants' motion to dismiss the claims against
Ciccone.

    **C.**   **Plaintiffs' Claims Under The FDCPA**

Defendants argue that "when one eventually reaches the
portion of the Plaintiffs' Complaint relevant to the Defendants,
one only finds threadbare assertions and illusory conclusions
that are not actionable under the [sic] either FDCPA or any
applicable state statute, and even if they were, are not
supported by any relevant facts."  Defs.' Mem. at 9.  Plaintiffs
respond that they have stated a claim for violation of the FDCPA
on two grounds.  First, plaintiffs argue that "Defendants'
representations to both Plaintiffs and the Magisterial District
Court that Mr. Yentin was liable to Cashcall, Inc. or Defendants
in the amount of $2,600.00 violated 15 U.S.C. § 1692e(2)(A)."

17

Pls.' Resp. at 9.  Second, plaintiffs aver that "[i]t has been

held that a violation of state law (or even a threat to do so)

during a collection process forms the basis of an FDCPA

violation," id. at 9-10, and that

> It cannot be disputed that Defendants
> represent the original creditor -- CashCall,
> Inc. -- because they are seeking to collect
> upon a debt allegedly owed to that entity.
> Moreover, it also cannot be disputed that
> Defendants are a 'collection agency,' who
> filed a legal action against Alexander Yentin
> and prosecuted this legal action, from
> inception and until withdrawal, without legal
> counsel.  Section 7311 clearly proscribes
> such conduct. . . . Therefore, Plaintiffs
> have stated a claim for violation of the
> FDCPA.

Id. at 11-12.  These grounds appear to be additional to those

identified in the complaint, where plaintiffs allege that

> Plaintiffs have been harmed as a result of
> Defendant(s)' conduct, including (but not
> limited to) the following, which Plaintiffs
> believe to be true and correct upon
> information and belief:
>
> a.    Failing to conduct a reasonable review
>       and/or investigation to determine the
>       merits of the alleged credit card debt;
>
> b.    Failing to afford an individual review
>       to the account of Plaintiffs' alleged
>       debt; and
>
> c.    Failing to comply with the applicable
>       federal and state laws, statutes, and
>       regulation[s].

> As described herein, the actions of the
> Defendant(s) violate the applicable
> provisions of the FDCPA . . . .

Pls.' Compl. ¶¶ 30-31.

We must therefore consider whether plaintiffs have succeeded in stating four different claims under the FDCPA: (1) failure to conduct an investigation; (2) failure to conduct an individual review; (3) violation of Pennsylvania law in a collection process; and (4) misrepresenting Alexander's liability for a debt.  Moreover, because plaintiffs have asked for leave to amend their complaint "[i]n the event that the Honorable Court may agree with Defendants' arguments," Pls.' Resp. at 21 n. 30, we must also consider whether such amendment would be futile[4] regarding those claims that we dismiss as insufficient.

### 1.  <u>The Provisions Of The FDCPA</u>

As the FDCPA itself explains, Congress enacted the Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively

---

[4] <u>See</u> <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.").

disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e). Congress was motivated by concern stemming from "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," and noted that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."  § 1692(a).

The Act defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt," § 1692a(3), and defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, [though] such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."  § 1692a(4).  A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  § 1692a(6).  Under the Act, "any debt collector who

fails to comply with any provision of this subchapter with respect to any person is liable to such person." § 1692k(a).

Plaintiffs have not specifically identified the provisions of the Act under which they bring their claims, but these claims appear particularly to implicate three of the Act's sections: §§ 1692e, g, and k. Section 1692e provides that

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (2)  The false representation of --
>
> (A)  the character, amount, or legal status of any debt;
>
> . . .
>
> (3)  The false representation or implication that any individual is an attorney or that any communication is from an attorney.
>
> . . .
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to

collect any debt or to obtain
information concerning a consumer.

. . .

Section 1692g provides that:

(a)  Notice of debt; contents[.]  Within five days
     after the initial communication with a consumer in
     connection with the collection of any debt, a debt
     collector shall, unless the following information
     is contained in the initial communication or the
     consumer has paid the debt, send the consumer a
     written notice containing --

     (1)  the amount of the debt;

     (2)  the name of the creditor to whom the
          debt is owed;

     (3)  a statement that unless the consumer,
          within thirty days after receipt of the
          notice, disputes the validity of the
          debt, or any portion thereof, the debt
          will be assumed to be valid by the debt
          collector;

     (4)  a statement that if the consumer
          notifies the debt collector in writing
          within the thirty-day period that the
          debt, or any portion thereof, is
          disputed, the debt collector will obtain
          verification of the debt or a copy of a
          judgment against the consumer and a copy
          of such verification or judgment will be
          mailed to the consumer by the debt
          collector; and

     (5)  a statement that, upon the consumer's
          written request within the thirty-day
          period, the debt collector will provide
          the consumer with the name and address

of the original creditor, if different
from the current creditor.

(b)   Disputed debts[.]  If the consumer notifies the
      debt collector in writing within the thirty-day
      period described in subsection (a) of this section
      that the debt, or any portion thereof, is
      disputed, or that the consumer requests the name
      and address of the original creditor, the debt
      collector shall cease collection of the debt, or
      any disputed portion thereof, until the debt
      collector obtains verification of the debt or a
      copy of a judgment, or the name and address of the
      original creditor, and a copy of such verification
      or judgment, or name and address of the original
      creditor, is mailed to the consumer by the debt
      collector.  Collection activities and
      communications that do not otherwise violate this
      subchapter may continue during the 30-day period
      referred to in subsection (a) of this section
      unless the consumer has notified the debt
      collector in writing that the debt, or any portion
      of the debt, is disputed or that the consumer
      requests the name and address of the original
      creditor.  Any collection activities and
      communication during the 30-day period may not
      overshadow or be inconsistent with the disclosure
      of the consumer's right to dispute the debt or
      request the name and address of the original
      creditor.

(c)   Admission of liability[.]  The failure of a
      consumer to dispute the validity of a debt under
      this section may not be construed by any court as
      an admission of liability by the consumer.

(d)   Legal pleadings[.]  A communication in the form of
      a legal pleading in a civil action shall not be
      treated as an initial communication for purposes
      of subsection (a) of this section.

.  .  .

Finally, § 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

## 2. __Failure To Investigate Or Conduct A Review__

We will address the claims identified explicitly in the complaint together.  Plaintiffs supply no specific factual averments in support of their claims that defendants failed to investigate the debt allegedly owed by Alexander or to afford individual review of this debt.  We can consequently have no confidence that any factual substrate supports these claims, and hence cannot reasonably expect that "discovery will reveal evidence of the necessary element."[5]  __Phillips__, 515 F.3d at 234. Without even considering whether the FDCPA __could__ support

---

[5] Plaintiffs urge that in order for defendants to "argue that the Complaint is legally insufficient," they must show that "given the set of facts at issue, Plaintiffs can never obtain recovery for the wrongs done to them."  Pls.' Resp. at 8. Plaintiffs are apparently unmindful that the Supreme Court held in __Twombly__ that "__Conley__'s 'no set of facts' language . . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard."  550 U.S. at 562-63.

liability based on these grounds, we can therefore dismiss plaintiffs' complaint to the extent that it states claims under the FDCPA for failure to investigate or afford review.

Because plaintiffs have requested leave to amend their complaint, however, we must consider whether the FDCPA creates a cause of action when a defendant debt collector fails to conduct adequate investigation or to afford individual review. Plaintiffs have directed us to no provision of the FDCPA imposing upon a debt collector any duty to "investigate" debts that it seeks to collect -- either before collection activities begin or after a consumer disputes a debt -- and our review of the Act has also revealed no such provision.[6]  We will thus deny, on the grounds of futility, plaintiffs' request for leave to amend their complaint to state the claim that defendants neglected their "duty to investigate" under the FDCPA.[7]

---

[6] This stands in contrast to the Fair Credit Reporting Act ("FCRA"), which provides that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . conduct an investigation with respect to the disputed information."  15 U.S.C. § 1681s-2(b)(1)(A).

[7] Because we dismiss this claim and withhold leave to amend the complaint with respect to it, we need not consider defendants' argument that MLAI adequately investigated the debt

(continued...)

The Act does, however, require that if a "consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed," the debt collector must cease collection of the debt "until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector."  15 U.S.C. § 1692g(b).  We may construe this provision to afford the right to "an individual review to the account of Plaintiffs' alleged debt" that plaintiffs claim. Pls.' Compl. ¶ 30.[8]  The allegations of plaintiffs' complaint do not foreclose the possibility that, upon amendment, plaintiffs will aver that (1) within thirty days of receiving a notice containing the information described in § 1692g(a), plaintiffs

_____

[7] (...continued)
Alexander allegedly owed.  Defs.' Mem. at 11-12.

    [8] The right of "review" that this provision creates, however, is limited in scope.  Our Court of Appeals has found sufficient a verification that informed a consumer of "the amounts of his debts, the services provided [to produce those debts], and the dates on which the debts were incurred," Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991), and in an oft-cited opinion, the Fourth Circuit has explained that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."  Chaudhry v. Gallerizzo, 174 F.3d 394, 406 (4th Cir. 1999).

notified defendants in writing that they disputed the alleged debt[9]; and (2) defendants continued with collection of the debt before obtaining and mailing the verification required by § 1692g(b).  We will therefore give plaintiffs the opportunity to amend their complaint to supply these averments.

### 3.   <u>Liability For Violations Of § 7311(b)</u>

Turning to the second ground for FDCPA liability that plaintiffs identify in their response, plaintiffs suggest that defendants violated 18 Pa. Cons. Stat. § 7311, and thus the FDCPA, by "representing" a creditor and directly furnishing legal services.  In support of this argument, plaintiffs declare that "[i]t cannot be disputed that Defendants represent the original creditor -- CashCall, Inc. -- because they are seeking to collect upon a debt allegedly owed to that entity," and assert that defendants "filed a legal action against Alexander Yentin and prosecuted this legal action, from inception and until withdrawal, without legal counsel."   Pls.' Resp. at 11-12.

---

[9] While plaintiffs already allege in their complaint that they informed defendants directly by telephone that an identity theft had occurred, Pls.' Compl. ¶ 15, they do not supply the date this communication took place or identify the debt that it concerned, and it is evident from their allegation that this communication was not "in writing."  This allegation thus cannot support a claim under § 1692g(b).

Unfortunately, neither of these claims is supported by any factual allegations in plaintiffs' complaint.  Plaintiffs do allege that "[o]n November 29, 2010, MLAI filed a Civil Complaint . . . seeking to collect upon an alleged debt owed to CashCall, Inc."  Pls.' Compl. ¶ 26.  However, the civil complaint to which plaintiffs refer merely explains that MLAI sought judgment against Alexander "for unpaid balance on a CashCall, Inc." account, and that "[t]his account was purchased by MLAI and Associates."  Ex. B to Pls.' Compl.  The document upon which plaintiffs rely in alleging that defendants represent CashCall, then, does not actually state that such a relationship exists. Instead, the civil complaint merely identified the debt which MLAI sought to collect by referencing the original owner and account number, and specified that MLAI now owned the debt. Plaintiffs have alleged no other concrete facts which, if proven, would demonstrate that defendants represented CashCall.  As a result, plaintiffs have failed to allege facts that could establish a representational relationship between defendants and CashCall.  Even if such a relationship could give rise to liability under the FDCPA, plaintiffs have not stated this claim.

The second claim -- that defendants pursued legal action against Alexander without legal counsel -- finds even less

support in the allegations of plaintiffs' complaint, which
nowhere avers that defendants have ever proceeded against
plaintiffs without legal counsel.  The civil complaint that
plaintiffs attach to their complaint does include blank spaces
for "Plaintiff's Attorney,"  "Address," and "Telephone," but we
cannot reasonably infer that defendants' failure fully to fill
out a form civil complaint creates the "reasonable expectation
that discovery will reveal" that defendants actually proceeded in
that matter without legal counsel.  Phillips, 515 F.3d at 234.
Even if proceeding without legal counsel in a debt collection
action could generate liability under the FDCPA, plaintiffs have
not succeeded in stating such a claim.

        Notwithstanding the complaint's insufficiency, we must
consider whether amendment might permit plaintiffs to state
claims on the asserted bases.  Section 7311(b) makes it "unlawful
for a collection agency to appear for or represent a creditor in
any manner whatsoever, [though] a collection agency, pursuant to
subsection (a), may bring legal action on claims assigned to it
and not be in violation of subsection (c) if the agency appears
by an attorney."  Nothing in the complaint would prevent
plaintiffs from averring facts that, if proven, could demonstrate

that defendants had violated § 7311(b).  Whether such amendment

would support liability under the FDCPA, however, is less clear.

Plaintiffs proclaim that "[i]t has been held that a

violation of state law (or even a threat to do so) during a

collection process forms the basis of an FDCPA violation," Pls.'

Resp. at 9-10, and cite an array of cases outside our Circuit, as

well as Crossley v. Lieberman, 868 F.2d 566 (3d Cir. 1989), and

Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 811 (D.N.J.

2011).  Plaintiffs misinterpret these cases.  Crossley and

Chulsky considered claims under 15 U.S.C. § 1692e(5), which

proscribes "[t]he threat to take any action that cannot legally

be taken or that is not intended to be taken." Crossley found a

letter "threaten[ing] to take action 'within one week' of the

date of the letter unless payment was made in full" to be

misleading -- and hence violative of the Act -- because the

defendant "knew that because of Act 6 [of 1974, 41 Pa. Cons.

Stat. § 101, et seq.] he was not permitted to institute suit

within one week."  868 F.2d at 571.  Chulsky concluded that "a §

1692e violation may be based on a misrepresentation of the

ability to collect a debt under state law."  777 F.Supp.2d at

821.   Neither case, however, suggested that a violation of state

30

law, unaccompanied by any threat or misrepresentation, could by itself give rise to an FDCPA claim.

While plaintiffs have not alleged that defendants threatened to take any action that violated state law, nothing in their complaint forecloses this possibility.  Thus, if plaintiffs can come forward with factual allegations that defendants _threatened_ to commit actions violative of 18 Pa. Cons. Stat. § 7311, they may amend their complaint to state this claim.

### 4.   **Misrepresentation Of The Character Of The Debt**

Finally, plaintiffs argue in their response that "[d]efendants' representations to both Plaintiffs and the Magisterial District Court that Mr. Yentin was liable to Cashcall, Inc. or Defendants in the amount of $2,600.00 violated 15 U.S.C. § 1692e(2)(A)."  Pls.' Resp. at 9.  Defendants reply that filing a civil complaint against a consumer cannot lead to liability under the FDCPA, since "[i]f this were the case, then EVERY defendant in a state court collection action would automatically have an actionable claim under the FDCPA."  Defs.' Reply at 3 (emphasis in original).

In a refreshing change of pace, plaintiffs' claim is actually supported by concrete allegations in the complaint.

Plaintiffs aver that "in the summer of 2007, Plaintiffs' personal information was used to initiate or open at least one unauthorized account or line of credit with CashCall, Inc.," Pls. Compl. ¶ 18, and that "[o]n November 29, 2010, MLAI filed a Civil Complaint against ALEXANDER YENTIN in the Magisterial District Court of Bucks County . . . seeking to collect upon an alleged debt owed to CashCall, Inc." Id. at ¶ 26. We thus cannot reject this claim as wholly unsupported by the complaint, as we did with plaintiffs' other FDCPA claims. We must look to the applicable law to judge its adequacy. Doing so will in turn require us to consider four different inquiries.

15 U.S.C. § 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." A threshold question regarding plaintiffs' claim is whether the mere filing of a civil complaint -- which is all that plaintiffs allege -- constitutes a representation. While the FDCPA does not define "representation," see § 1692a, Black's Law Dictionary explains that a "representation" is "[a] presentation of fact -- either by words or by conduct -- made to induce someone to act, esp. to enter into a contract; esp., the manifestation to another that a fact, including a state of mind, exists." Black's Law Dictionary 1415 (9th ed. 2009).

32

To judge whether the filing of a complaint can constitute "a presentation of fact," we may consult the Pennsylvania Rules of Civil Procedure, under which defendants filed their civil complaint. Pa. R. Civ. P. 1007 explains that "[a]n action may be commenced by filing with the prothonotary (1) a praecipe for a writ of summons, or (2) a complaint," and Rule 1019(a), governing the "Contents of Pleadings", explains that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." The Rules thus draw a distinction between the filing of a complaint and its contents: filing is an act that initiates a civil action, while the contents of a complaint set out the facts on which that action is based. If the latter would constitute a "presentation of fact," the former appears to have only procedural import.

Consequently, plaintiffs' <u>complaint</u> in this action does not actually allege facts that, if true, would prove a violation of § 1692e(2)(A), since it merely avers that MLAI <u>filed</u> a complaint against Alexander. But if we consider the documents relied on in the complaint as well, we find that the civil complaint defendants filed against Alexander in Bucks County contains the following language, Ex. B to Pls.' Compl.:

>TO THE DEFENDANT: The above named
>plaintiff(s) asks judgment against you for
>$2600.00 together with costs upon the
>following claim (Civil fines must include
>citation of the statute or ordinance
>violated): FOR UNPAID BALANCE ON A CashCall,
>Inc. ####3516[.]  This is an attempt to
>collect a debt and any information obtained
>will be used for that purpose.  THIS ACCOUNT
>WAS PURCHASED BY MLA AND ASSOCIATES[.]

These statements <u>do</u> constitute presentations of fact, and

therefore qualify as representations under the Act.

A second question that we must answer is whether such

representations, contained in civil pleadings, fall within the

ambit of the FDCPA's prohibition against false representations.

On the one hand, the doctrine of "judicial privilege" provides

that "'pertinent and material' communications made in the context

of judicial proceedings are absolutely privileged from civil

liability," <u>Naythons v. Stradley, Ronan, Stevens & Young LLP</u>, 339

Fed. Appx. 165, 167 (3d Cir. 2009) (quoting <u>Moses v. McWilliams</u>,

549 A.2d 950, 956 (Pa. Super. 1988)), since "'there is a realm of

communication essential to the exploration of legal claims that

would be hindered were there not the protection afforded by the

privilege.'" <u>Gen. Refractories Co. v. Fireman's Fund Ins. Co.</u>,

337 F.3d 297, 311 (3d Cir. 2003) (quoting <u>Post v. Mendel</u>, 507

A.2d 351, 355 (Pa. 1986)).  On the other hand, this doctrine is a

34

creature of Pennsylvania common law, not federal statutory law,
and "the FDCPA does not contain an exemption from liability for
common law privileges." Allen ex rel. Martin v. LaSalle Bank,
N.A., 629 F.3d 364, 369 (3d Cir. 2011).  Moreover, the FDCPA
exempts formal legal pleadings from certain of its requirements,
see §§ 1692e(11) and 1692g(d), so that the maxim of exclusio
unius est exclusio alterius[10] suggests that other of its
requirements are applicable to non-pleadings and pleadings alike.
After considering similar arguments, Judge Shapiro has concluded
that "the language of the FDCPA is broad enough to include the
contents of formal pleadings within its scope except where formal
pleadings are explicitly exempted." Henry v. Shapiro, 2010 WL
996459, at *2 (E.D. Pa. 2010).  We agree.

        The next question to consider is whether, if we credit
plaintiffs' allegations, the defendants' civil complaint
contained a misstatement of material fact as to the debts at
issue.  Our Court of Appeals has explained that "any lender-
debtor communications potentially giving rise to claims under the
FDCPA . . . should be analyzed from the perspective of the least
sophisticated debtor," Brown v. Card Serv. Ctr., 464 F.3d 450,

---

        [10] "'[T]o express one is to exclude the other.'"
Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 372 (3d Cir. 1999).

454 (3d Cir. 2006); such a standard "protects naive consumers,"
id., while "'prevent[ing] liability for bizarre or idiosyncratic
interpretations of collection notices.'"   Id. (quoting Wilson v.
Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)).   The
unavoidable implication of the statements in defendants'
complaint that MLAI "asks judgment against you for $2600.00 . . .
FOR UNPAID BALANCE ON A CashCall, Inc. ####3516" and that "[t]his
is an attempt to collect a debt," Ex. B to Pls. Compl. --
particularly to a naive consumer -- is that plaintiffs owed
defendants a debt arising out of a CashCall account, even if the
complaint does not say this in so many words.   Since plaintiffs
allege that any account or line of credit opened with CashCall
using their information was created without their authorization,
Pls.' Compl. ¶ 18, defendants' civil complaint would appear to
contain a material misstatement as to plaintiffs' liability if we
take plaintiffs' allegations to be true.

        Thus, we come to our fourth, final, and perhaps most
interesting question: does such a material misstatement
constitute a "false representation" under § 1692e(2)(A)?
Defendants contend that it does not, arguing that they filed the
"collection action against [Alexander] based on an unpaid debt
that MLA[I] had good reason to believe was due and owing."

Defs.' Reply at 4.  For their part, plaintiffs urge that "[t]he FDCPA is a strict liability statute," Pls.' Resp. at 6, quoting Allen for the proposition that "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation."  629 F.3d at 368.  In the end, we agree more with plaintiffs' position and find that § 1692e(2)(A) imposes liability regardless of knowledge or intent.  To explain why we so conclude, we must first canvass the authority on this subject from both inside and outside our Circuit.

Those circuit courts that have considered whether § 1692e requires a showing of intent have concluded that it does not.  Thus, the Ninth Circuit observed in Clark v. Capital Credit & Collection Servs., Inc. that "the Seventh Circuit has held that '§ 1692e applies even when a false representation was unintentional,'" 460 F.3d 1162, 1175 (9th Cir. 2006) (quoting Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000)), and that "[t]he Second Circuit has adopted a similar position," id. at 1175-76 (citing Russell v. Equifax A.R.S., 74 F.3d 30, 36 (2d Cir. 1996)), before concluding that it "agree[d] with the Second and Seventh Circuits."  Id. at 1176.  Clark based this holding on two grounds.  First, the court determined that since § 1692k(c) creates a bona fide error defense, "[r]equiring

37

a violation of § 1692e to be knowing or intentional needlessly renders superfluous § 1692k(c)." Id.  Second, it concluded that "'Congress took care to require an element of knowledge or intent in certain portions of the FDCPA where it deemed such a requirement necessary.'"  Id. at 1176 n.11 (quoting Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000)).

          Within our own Circuit, however, the authority points in a different direction.  Notwithstanding the passage quoted above from Allen, our Court of Appeals has not ruled on whether § 1692e(2)(A) applies to unintentional representations; Allen cannot stand for the proposition that all practices prohibited by the FDCPA are proscribed without regard to a debt collector's intent, since the language of some provisions of the Act explicitly includes a knowledge or intent element.  See, e.g., § 1692d(5) ("Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."); § 1692f(3) ("The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution."); § 1692c(a)(1) ("[A] debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual

time or place or a time or place known or which should be known to be inconvenient to the consumer."). A more likely interpretation of <u>Allen</u> is that where the language (and possibly, the logic) of the FDCPA are silent as to intent, the Act imposes strict liability.

District courts from our Circuit that have considered the question have concluded, moreover, that to be actionable under § 1692e, false, misleading, or deceptive representations must be intentional or stem from a failure to exercise reasonable care. In <u>Beattie v. D.M. Collections, Inc.</u>, 754 F. Supp. 383, 392 (D. Del. 1991), Judge Schwartz observed that "[t]he term 'false representation' . . . would seem to imply that [§ 1692e(2)(A)] prohibits intentional conduct," and concluded that "debt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts." That same year, Judge Latchum determined, after parsing the words of the provision, that "[t]he plain meaning of § 1692e is that only knowing and intentional conduct is punishable." <u>Hubbard v. Nat'l Bond & Collection Assocs.</u>, Inc., 126 B.R. 422, 427 (D. Del. 1991). In <u>Farren v. RJM Acquisition Funding, LLC</u>, Judge Pratter rejected a claim under § 1692e(2)(A) because the plaintiff did

not "cite to any evidence that [the defendant] was contemporaneously aware that the debt was not owed by [the plaintiff]," explaining that "[t]he FDCPA is a strict liability statute, but that does not alter the plain meaning of the predicate in the statute which requires a 'false representation.'"  2005 WL 1799413, at *9 (E.D. Pa. 2005).  And Judge Hayden has rejected a § 1692e claim because the plaintiff "proffered no evidence that . . . defendants intentionally attempted to mislead" a court.  <u>Parker v. Pressler & Pressler, LLP</u>, 650 F. Supp. 2d 326, 343 (D.N.J. 2009).

Of these decisions, <u>Hubbard</u> in our view provides the most reasoned explanation of why violations of § 1692e require <u>some</u> intent on the part of debt collectors.  Judge Latchum first examines the language of § 1692e, explaining that

> Black's Law Dictionary defines the terms "false representation," "false," "deception," and "misleading" as follow[s]:
>
> FALSE REPRESENTATION.  A representation which is untrue, wilfully made to deceive another to his injury.
>
> FALSE.  In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.

> DECEPTION.  The act of deceiving; intentional
> misleading by falsehood spoken or acted.
>
> MISLEADING.  Delusive; calculated to lead
> astray or to lead into error.

126 B.R. at 427 (quoting <u>Black's Law Dictionary</u> 750, 748, 529 &

1193 (3d ed. 1933)).  In light of these definitions, Judge

Latchum explains, § 1692e's prohibition on "the use of 'any

false, deceptive, or misleading representation or means in

connection with the collection of any debt.' . . . suggests to

the Court that § 1692e was intended to prohibit only knowing or

intentional misrepresentations by debt collectors."  <u>Id.</u>

Judge Latchum then looks to the purpose and structure

of the FDCPA, noting that Congress intended the FDCPA to

"function 'without imposing unnecessary restrictions on ethical

debt collectors,'" <u>id.</u> at 428 (quoting S. Rep. No. 382, 95th

Cong., 1st Sess. 2, <u>reprinted in</u> 1977 U.S. Code. Cong. & Admin.

News 1696), and describing the notice provisions of the Act:

> Under § 1692g a debtor must be notified in
> writing that he can dispute the validity of a
> debt, or any portion of it, and demand
> verification of the debt's existence.
> Through this process, the debt collector
> learns whether the debt is contested and the
> reasons, if any, for the debtor's refusal to
> pay.  The statutory scheme of the FDCPA thus
> allows debt collectors to avoid the costs of
> investigating a debtor's background and
> ensures a cost effective means by which a

>       debtor and debt collector can exchange
>       information.  This is an important part of
>       the FDCPA's statutory scheme.  The
>       plaintiff's contention that debt collectors
>       must bear the entire burden of collecting
>       information concerning debtors ignores the
>       importance of § 1692g and the Congressional
>       intent behind its enactment.

Id. at 428 (internal citations omitted).  Given the language and

structure of the FDCPA, Judge Latchum thus determines that "only

a knowing violation of § 1692e is actionable," id., and further

concludes that "a 'false representation' under § 1692e(2)(A)

requires that the misrepresentation be intentional."  Id. at 429.

        But we respectfully take issue with Judge Latchum's

reasoning and conclusions.  To begin, recent decisions of our

Court of Appeals call into question the validity of Hubbard's

definitional analysis.  Though Judge Latchum finds "deceptive" to

denote "intentional[ly] misleading," our Court of Appeals has

concluded that "a debt collection letter is deceptive where 'it

can be reasonably read to have two or more different meanings,

one of which is inaccurate.'"  Brown v. Card Serv. Ctr., 464 F.3d

450, 455 (3d Cir. 2006) (quoting Wilson v. Quadramed Corp., 225

F.3d 350, 354 (3d Cir. 2000)).  Since our Court of Appeals,

notwithstanding Hubbard's definition of "deceptive," did not see

fit to import any notion of intent into its conception of when a

42

communication is deceptive, we see little reason to follow the definition of "false representation" in Hubbard and conclude that such representations must be made with the intent to deceive in order to be actionable under the Act.

Notably, a more recent edition of Black's Law Dictionary features definitions that differ significantly from those presented in Hubbard.[11]  In particular, as regards § 1692e(2)(A), Black's no longer includes an independent definition of "false representation," instead directing the reader to "misrepresentation," which is defined as "[t]he act of making a false or misleading assertion about something, usu. with the intent to deceive."  Black's Law Dictionary 678, 1091 (9th ed. 2009).  This definition is much more equivocal as to intent than that advanced in Hubbard for "false representation."  More tellingly, Black's definition of "false" has changed; it now offers three definitions -- "[u]ntrue," "[d]eceitful; lying," and "[n]ot genuine; inauthentic" -- and specifies that "[w]hat is false can be so by intent, by accident, or by mistake."  Id. at 677.  We do not think it possible to conclude from this entry that false representations must necessarily be intentional.  See

---

[11] Hubbard cited to a 1933 edition of Black's Law Dictionary.  126 B.R. at 427 (citing third edition from 1933).

also <u>Clark</u>, 460 F. 3d at 1175 n.10 ("Of course, false, deceptive, and misleading each have innocent definitions as well.").

As for the structure of the FDCPA, we agree that the Act likely does not mandate that "debt collectors must bear the entire burden of collecting information concerning debtors," <u>Hubbard</u>, 126 B.R. at 428.  We also agree that it does not hold debt collectors "to a standard of omniscience as to whether or not a debt will eventually be found to belong rightfully to someone other than the individual first identified as the debtor," <u>Farren</u>, 2005 WL 1799413, at *9, and that "there is room within the Act for ethical debt collectors to make occasional unavoidable errors without subjecting themselves to automatic liability."  <u>Beattie</u>, 754 F. Supp. at 392.  But it does not follow from these points that a plaintiff bears the burden under § 1692e(2)(A) of showing that a defendant's false representations were intentional, or even that a defendant failed to exercise reasonable care in ascertaining the relevant facts.

Section 1692k(c) permits a defendant to assert a bona fide error defense if it establishes "(1) the alleged violation was unintentional, (2) the alleged violation resulted from a bona fide error, and (3) the bona fide error occurred despite procedures designed to avoid such errors," <u>Beck v. Maximus, Inc.</u>,

457 F.3d 291, 297-98 (3d Cir. 2006) (where a bona fide error is
"an error made in good faith; a genuine mistake, as opposed to a
contrived mistake." Kort v. Diversified Collection Servs., Inc.,
394 F.3d 530, 538 (7th Cir. 2005)).  Section 1692k(c) thus
protects from liability a debt collector who sought to collect a
debt from the wrong consumer as the result of a bona fide error
notwithstanding the adoption of procedures designed to avoid this
type of error.  The key respect in which § 1692k(c) differs from
the statutory scheme Hubbard and Farren envision is that a mere
mistake as to a debtor's identity does not, by itself, excuse a
debt collector who represents to a consumer that he owes a debt;
the debt collector must show that this mistake resulted despite
the operation of procedures designed to avoid this mistake.

And § 1692k(c) differs in its consequences from
Beattie's rule because it places the burden of showing
reasonableness on the defendant debt collector, not on the
plaintiff consumer.  This apportionment seems both consonant with
the Act's primary concern with protecting consumers and
discouraging abusive, deceptive, and unfair debt collection
practices, § 1692(a)-(b), and well-justified given that
defendants will usually have greater access to information about
their own procedures than plaintiffs.

45

We thus conclude that a plaintiff may state a claim under § 1692e(2)(A) merely by alleging that a defendant debt collector misstated a material fact regarding the character, amount, or legal status of any debt in connection with the collection of that debt without averring any intent or awareness on the part of the defendant.  Because plaintiffs have stated such allegations in their complaint, we will deny defendants' motion to dismiss plaintiffs' claim under § 1692e(2)(A).[12]

D.    **Yelena's Standing As A Plaintiff**

Defendants argue that "[a]t no time did any contractual obligation ever exist between Yelena Yentin and CashCall, Inc./First Bank of Delaware or MLA," so that "Plaintiff Yelena Yentin has never had any relation with either Defendant and thus has no standing to sue."  Defs.' Mem. at 15.  Plaintiffs respond that "the FDCPA['s] expansive protections apply to employers,

_____

[12] Defendants claim in their motion that MLAI "had the loan documentation to warrant filing suit in state court," Defs.' Mem. at 6, and that it therefore "had every justification for filing and maintaining its collection suit against Aleksandr Yentin."  Id. at 16.  While we may take this as an assertion of the bona fide error defense under § 1692k(c), factual allegations supporting this defense do not "clearly appear[] on the face of [plaintiffs'] pleading."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  We will consequently disregard these assertions in ruling on the motion.

relatives, friends, and neighbors of the individuals affected by FDCPA violations." Pls.' Resp. at 17.

15 U.S.C. § 1692k(a) provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." As Judge Padova has explained, "[f]ederal courts interpret Section 1692k(a) as a broad grant available to persons who are not obligated or allegedly obligated to pay the debt that the defendant sought to collect."[13] Wenrich v. Robert E. Cole, P.C., 2001 WL 4994, at *3 (E.D. Pa. 2000). However, such persons must nonetheless "'claim they are harmed by proscribed debt collection practices,'" id. (quoting Whatley v. Univ. Collection Bureau Inc. (Fla.), 525 F. Supp. 1204, 1206 (N.D. Ga. 1981)), in order to have standing.

Plaintiffs have alleged that "[a]s a result of Defendant(s)' conduct . . . Plaintiffs have been subjected to extreme aggravation, frustration, anxiety, harassment,

---

[13] Judge Padova does note that "[u]nder certain sections of the FDCPA, a plaintiff must be a 'consumer' as defined in the FDCPA to have a cause of action because those sections define violations in terms of conduct directed toward a 'consumer.'" Wenrich, 2001 WL 4994, at *4. Because § 1692e -- the provision under which we have found plaintiffs have already stated a claim -- is not one of these sections, plaintiffs' standing is not predicated on their status as "consumers".

intimidation, and annoyance," and "have been (and will continue to be) financially damaged due to Defendant(s)' conduct."  Pls.' Compl. ¶¶ 34-35.  Because plaintiffs have thus claimed that Yelena was harmed by defendants' alleged conduct, Yelena has standing to bring suit under the Act.[14]

### E.    **Plaintiffs' State Law Claims**

Defendants urge that "[b]ecause Plaintiff's FDCPA claims against Defendant have no merit, Plaintiff's parallel state law claims equally have no basis in fact or law, and therefore have no merit."  Defs.' Mem. at 15.  Defendants have hardly troubled to support this claim, either with reasoning or references to caselaw.[15]  In any event, since we deny defendants'

---

[14] This conclusion is only bolstered by the contention, in the Act itself, that "[a]busive debt collection practices contribute . . . to marital instability."  15 U.S.C. § 1692(a).  It would be strange indeed if spouses of consumers could not bring suit under the FDCPA, given that marital discord was in part the mischief that motivated Congress to adopt the Act.

[15] While it is true that "[v]iolation of the FDCPA is a per se violation of the FCEU[A]," Jarzyna v. Home Properties, L.P., 763 F. Supp. 2d 742, 749 (E.D. Pa. 2011) (Robreno, J.) (citing 72 Pa. Cons. Stat. § 2270.2), and that "[a] violation of the FCEUA is a per se violation of the UTPCPL," Antkowiak v. Taxmasters, 2011 WL 941391, at *16 (E.D. Pa. 2011) (Stengel, J.) (citing 73 Pa. Cons. Stat. § 2270.5(a)), defendants have not explained why plaintiffs' FCEUA and UTPCPL claims are necessarily predicated on their FDCPA claim and do not stand independently.

motion to dismiss plaintiffs' FDCPA claim under § 1692e, we may reject this argument out of hand.

### F.   **Plaintiffs' Good Faith In Maintaining Suit**

Finally, defendants urge that we grant their "claim for attorneys' fees and costs in accordance with 15 U.S.C. § 1692k(a)(3)," Defs.' Mem. at 16, contending that "[p]laintiffs continue to maintain this action in bad faith." Id. at 15. Since we rule today that plaintiffs have actually stated a claim under the FDCPA (and hence the FCEUA and UTPCPL), and that plaintiffs may be able upon amendment to state other claims under these statutes, we reject defendants' request.

BY THE COURT:

\_\_\s\Stewart Dalzell